ORIGINAL

LAW OFFICE OF HOWARD K. K. LUKE
ATTORNEYS AT LAW

HOWARD K. K. LUKE          2049
Davies Pacific Center
841 Bishop St., Suite 2022
Honolulu, Hawaii 96813
Tel.:   (808) 545-5000
Fax:    (808) 523-9137
Email:  howardkkluke@hawaii.rr.com

Attorney for Defendant
 MICHAEL FURUKAWA (01)

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 2 5 2006

at 9 o'clock and 30 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO.  04-00243-01-DAE |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT |
| | ) | OF DEFENDANT MICHAEL |
| vs. | ) | FURUKAWA'S (01) MOTION |
| | ) | FOR JUDGMENT OF ACQUITTAL |
| FURUKAWA,            (01) | ) | PURSUANT TO RULE 29(a) OF |
| WES UEMURA,          (02) | ) | THE FEDERAL RULES OF |
| DENNIS HIROKAWA,     (03) | ) | CRIMINAL PROCEDURE; |
| RICHARD OKADA,       (04) | ) | EXHIBIT A; CERTIFICATE OF |
| | ) | SERVICE |
| Defendants. | ) | |
| | ) | TRIAL:      September 20, 2006 |

MEMORANDUM IN SUPPORT OF DEFENDANT
MICHAEL FURUKAWA'S (01) MOTION FOR JUDGMENT
OF ACQUITTAL PURSUANT TO RULE 29(a) OF
THE FEDERAL RULES OF CRIMINAL PROCEDURE

Defendant Michael Furukawa herewith submits the following memorandum in support of his oral motion for judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The instant memorandum is intended to supplement Defendant Michael Furukawa's oral motion for judgment of acquittal made at the close of the prosecution's case-in-chief.

Appended to the instant memorandum as Exhibit "A" is an unedited rough transcript of the testimony of Mrs. Sheila K. Walters of October 17, 2006 (hereinafter "unedited transcript"). The unedited transcript is not an official transcript, and therefore does not necessarily constitute a verbatim reproduction of trial testimony. The unedited transcript is cited and appended hereto solely for the purpose of facilitating argument on Defendant Michael Furukawa's motion for a judgment of acquittal. The official transcript is currently in the process of being prepared, and a copy will be submitted to the court and all counsel upon request.

## INTRODUCTION

The Second Superseding Indictment (hereinafter "Indictment) filed on March 16, 2006 alleges that:

34. On or about the dates listed below, within the District of Hawaii, and elsewhere, for the purpose of carrying out the aforesaid scheme and artifice to defraud, the defendants . . . did knowingly cause  to be delivered to the United States Postal Service [State of Hawaii checks], to be placed in a post office and an authorized depository for mail matter to be sent and delivered by the United States Postal Service, with each mailing constituting a separate count of this Second Superseding Indictment[.]

Defendants Michael Furukawa, Wesley Uemura, and Dennis Hirokawa are charged

with 32 counts of mail fraud in violation of 18 U.S.C. § 1341, which reads

provides:

> Whoever, having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises, or to sell,
> dispose of, loan, exchange, alter, give away, distribute, supply, or
> furnish or procure for unlawful use any counterfeit or spurious coin,
> obligation, security, or other article, or anything represented to be or
> intimated or held out to be such counterfeit or spurious article, for
> the purpose of executing such scheme or artifice or attempting so to do,
> places in any post office or authorized depository for mail matter, any
> matter or thing whatever to be sent or delivered by the Postal Service,
> or deposits or causes to be deposited any matter or thing whatever to be
> sent or delivered by any private or commercial interstate carrier, or
> takes or receives therefrom, any such matter or thing, or knowingly
> causes to be delivered by mail or such carrier according to the
> direction thereon, or at the place at which it is directed to be
> delivered by the person to whom it is addressed, any such matter or
> thing . . . .

### ARGUMENT

The essential elements of an offense under 18 U.S.C. § 1341 are

(1) the existence of a scheme to defraud;  (2) the participation by the defendant in

the particular scheme charged with the specific intent to defraud;  and (3) the use

of the United States mails in furtherance of the fraudulent scheme.  United States

v. Hannigan, 27 F.3d 890, 892 (3d Cir. 1994).  The court in Hannigan addressed

the issue of whether sufficient evidence had been provided to the jury to prove the

aforementioned third element.  Id. at 892.

In <u>Hannigan</u>, the defendant's conviction for mail fraud was

reversed by the Third Circuit Court of Appeals, which found that insufficient

evidence was introduced at trial to prove that the U.S. mails were used to

accomplish the alleged fraud.  In <u>Hannigan</u>, as in the case at bar, only one witness

testified to establish the mailing element of the alleged offense.  The court in

<u>Hannigan</u> stated that:

> In addition to Ms. Skowronski's testimony-that Travelers usually mailed claim checks and that special procedures were required when someone wanted instead to pick up a check-the government introduced computer printouts for the Sun Oil claims. The computer printouts contained a space entitled "attachment," in which a "Y" or "N" would be placed.  Skowronski testified that a "Y" meant the check was authorized to be picked up and an "N" meant that the check was to be mailed.  The computer printout for the repair claim addressed in Count One contained an "N" in the attachment column, and Skowronski testified that this indicated that the claim check was to be mailed, not picked up.
>
> On cross examination, Hannigan's counsel engaged in the following colloquy with Ms. Skowronski:
> Q: Now, you didn't mail the checks in this case yourself, did you?
> A: No.
> Q: All right.   And, you didn't see them put into the mail yourself, did you?
> A: No.
> Q: And, can you tell the jury where they're put to be mailed or who mails them?
> A: No.
> Q: You don't know that?
> A: I ...
> Q: After they're stuffed in an envelope, you don't know where the envelope goes?
> A: To our mail department.
> Q: Your mail department.   And where is your mail department?
> A: At that time, it was on, like-I think we were on the seventh floor and that was, like, on the fifth floor.
> Q: The fifth floor.   So, you never saw them actually put in the mail or

picked up in the mail, is that right?
A: No.
Q: And, someone could go to the mail department and pick one up and you
would never know it even though there was supposed to be a procedure, is
that correct?
A: That's correct.

Id. at 892.

The Hannigan court found that the government failed to establish that

as a routine practice, the U.S. mails were used by Travelers since Ms. Skowronski

testified that the "N" in the attachment column of the computer printout meant that

the claim check was to be sent to the mail room.

> Had the government presented some competent evidence that as a routine
> practice the mail room sent claims checks through the United States mail,
> the verdict would be sustained.   However, the direct and cross examination
> of Skowronski reveals that she had no **personal** knowledge that the routine
> practice of Travelers was to use the United States mails. (emphasis added)
> Skowronski only testified that she knew that the envelopes stuffed with the
> claims checks would go to the mail room.   Neither she nor anyone else
> established what the business practice was once the envelopes went to the
> mail room.

Id. at 893-894.

In the instant case there was insufficient evidence presented by the

government to prove the use of the United States mails in furtherance of the

alleged fraudulent scheme.  At trial on October 17, 2006, the government called

Mrs. Sheila K. Walters, an accounting systems manager with the State of Hawaii

Department of Accounting and General Services (hereinafter referred to as

"DAGS"). Mrs. Walters testified that one section of her branch receives summary warrant vouchers, the next section reviews and approves the vouchers for payment, then the vouchers are routed to another branch, then the following day, if the vouchers are cleared then checks are retrieved by the clerical branch, and Mrs. Walters' branch processes the checks according to the warrant routing indicator.

Mrs. Walters had no personal knowledge of the mailing of the specific checks at issue in the instant case:

[BY MR. LUKE:]
  Q.  Okay. So as far as your responsibilities are concerned, you're familiar with what goes on within the area of your supervision correct?
  A.  Yes.
  Q.  The rest of your testimony has to do with your understanding of the procedures that are generally followed with respect to DAGS and the handling of the summary warrant vouchers?
  A.  Excuse me, I - - could you - -
  Q.  Okay. I'm sorry if I didn't make myself clear.
  The rest of your testimony pertaining to how these summary warrant vouchers are handled and how the checks are disseminated has to do with your understanding of the procedures that are generally followed; is that correct?
  A.  These are the procedures followed.
  Q.  Okay. You don't have any personal knowledge of whether or not the checks were in fact mailed, do you?
  A.  Our established procedures are followed to the letter. So if it's marked mailed, we mail.
  Q.  Well, no I understand the procedures are I think you've testified. My question is: You don't have any personal knowledge as to how - -
. . . .(objection by Mr. Goya and the Courts ruling omitted)
  Q.  You don't have any personal knowledge, do you, ma'am?
  A.  No.

Unedited transcript at 48-50.

Mrs. Walters also did not give a detailed description of DAGS's mailing procedures,

BY MR. GOYA:

Q.     Ms. Walters, I believe where we left off was the issuance of checks and what I'll go into now is the procedures that are involved once the check is issued. Are you familiar with the procedures that your branch follows once a check is issued?

A.     Yes. Yes.

Q.     And could you tell us what procedures those are?

A.     Once the checks are printed over – in the overnight processing, the clerical staff retrieves the checks from the ICSD division and start working on it. We reconcile, we look at the – checks come out in routing versus mailing, and we process those checks by folding them and scanning to make sure everything is okay.

The routing, *we route to the department or we put it for pick up or in the mailing we have the courier take it to the post office*.

Unedited transcript at 28-29 (emphasis added).

Mrs. Walters did not provide a foundation for her knowledge of her office's mailing procedures and in fact acknowledged that occasionally checks may be delivered by other means even though the warrants indicate that the checks should be mailed:

Q.     All right. And in terms of the warrant routing indicator, have you received instruction concerning how that field should be dealt with?

A.     In the FAMIS system, a blank is mail, one is route.

Q.     All right. Now, in terms of, again, the various checks that are indicated on this summary warrant voucher, and we're looking at Government's Exhibit 4J, how would those checks have been delivered to the businesses?

. . . .

Q.     How would those checks have been delivered to those businesses?

A.    Mailed.

Unedited transcript at 31-32.

Q.    Okay.  Now, it's true that depending on instructions from the procuring department, the checks are either routed back to the procuring department or mailed to the vendor through the United States mail is that what you're saying?
A.    I didn't –
Q.    If there's a blank then supposedly it is supposed to be mailed, right?
A.    Mailed.
Q.    And in fact, the – that's part of what they call the default for the – for the routing of the check?
A.    Yes.
Q.    Okay.  Now, if it is blank, the warrant check should be mailed to the vendor; is that correct?
A.    Yes.
Q.    Occasionally a department may call up DAGS and put in a special request to have a warrant check that would have been mailed held for delivery back to the department?
      BY MR. GOYA:    Beyond the scope Your Honor?
      MR. LUKE:        Well, it has to do with the mailings, Your Honor.
      THE COURT:      Overruled.
Q.    You follow me, ma'am, Mrs. Walters?
A.    Are you saying that if it was left blank it could somehow be delivered?
Q.    Yeah, occasionally -- my question was occasionally a department will call up DAGS, the Department of Accounting and General Services --  and put in a special request to have a warrant check that would have otherwise been mailed held for delivery back to the department, correct?
A.    Yes.
Q.    That practice may also be discouraged, right?
A.    Strongly discouraged.
Q.    Okay.  But you testified that if the warrant routing indicator was blank, that means that the warrant check was mailed to the vendor, you testified to that?
A.    Yes.
Q.    Isn't it true that that's not always the case, though?  Occasionally the warrant routing indicator may be blank but the warrant check is not mailed back to the vendor; isn't that, ma'am, on occasion?
A.    On occasion, but we would notate that even though it was blank, it was released to the department and the date and who we released it to.  So if it was actually supposed to have been mailed but was routed, we would so notate on the

on the bottom.  If the top is blank and the department requests, you know, we would notate that it was released to the department on what date.

. . . .

Q.      You don't have personal knowledge whether that in fact is true –
        BY MR. GOYA:    Asked and answered, Your Honor.
        MR. LUKE:       Well –
        THE COURT:      She's already answered the question.  Sustained.

Unedited transcript at 53-56.

        It is clear that, in addition to the fact that Sheila Walters testified to matters without sufficient foundation laid for her testimony, her testimony as to the mailings of the summary warrant vouchers (1) was conclusory and speculative in nature, (2) included hearsay for which no exception applied, and (3) by her own admission was not based on her personal knowledge.

        Accordingly, in light of the foregoing, it is respectfully requested that counts 2 through 33 of the Second Superseding Indictment be dismissed.

        DATED:    Honolulu, Hawaii, October 25, 2006.

                        Respectfully submitted,


                        HOWARD K. K. LUKE

                        Attorney for Defendant
                        MICHAEL FURUKAWA (01)